

FILED
2009 Jul-30 PM 03:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TED BISHOP, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 08-G-1661-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

**MEMORANDUM OPINION**

The plaintiff, Ted Bishop, Jr., brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Social Security Disability benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

    (1)    whether the claimant is currently employed;

    (2)    whether he has a severe impairment;

    (3)    whether his impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform his past work; and

>   (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Jerry M. Lang determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Lang found that the plaintiff "has the following severe impairments: status post lumbar laminectomy at L44-5 and sarcoidosis. The claimant's diabetes mellitus is not considered a severe impairment." [R. 19]. The plaintiff was 51 years old at the time of the ALJ hearing. On November 19, 2002, he injured his back in a motor vehicle accident while working. [R. 274]. Jeffrey Wade, M.D., his treating orthopedic doctor, stated on October 12, 2005:

> Since that time, he says he has had some left back hip and leg pain that has been quite severe at times, and especially over the last several months has gotten quite severe. He has tried a lot of epidural steroid injections, physical therapy, anti-inflammatories, etc., without a great deal of relief. His chief complaint is that of back, hip and leg pain, with his leg being the predominant pain causer [sic] right now.
>
> Review of his MRI scan shows a fairly sizable disk herniation in the left lateral recess that is far lateral in its position and affects the extraforaminal nerve root. He had a small disk in this area back in his 2003 MRI. It certainly looks more impressive at this point on his more recent MRI scan.

[Id.]. On October 24, 2005, Dr. Wade performed a partial laminectomy with far lateral disc excision at L4-5. The plaintiff testified that he still suffers from chronic pain and that while riding in a car he must stop frequently to "stretch my back. I can't ride long, and I can't sit long." [R. 49]. He further testified that he lives with his brother-in-law, and does little around the house other than watch television or try to wash some dishes. [R. 49, 55]. The plaintiff estimated he could probably eight or nine pounds, and could

walk for eight or nine minutes before stopping because of breathing problems. [R. 52, 53]. Under direct examination, the plaintiff testified:

> Q: All right. What kind, I think you did say, I don't know if you said this to the Judge or not, but let me ask. Do you have any limitations on sitting?
>
> A: Yes, I do.
>
> Q: What --
>
> A: I can sit probably about maybe 15 to 16 minutes, sometime a little less than that. I have to get up and stand up.
>
> Q: Why?
>
> A: Because my back go to hurting. I have, still hurting toward the middle part back here.
>
> Q: Okay. So you move a lot?
>
> A: Yes, I –
>
> Q: Move positions?
>
> A: – I move a lot.
>
> Q: Okay.
>
> A: I don't know when I had a good eight hours sleep.
>
> Q: Okay.
>
> A: I can't stay, I can't sleep on my back. I have to always toss and turn.

[R. 53, 54]. He estimated he could stand on his feet for less than 30 minutes. [R. 55].

The ALJ found that although the plaintiff meets the 11th Circuit's pain standard, his "statements concerning the intensity, persistence and limiting effects of

these symptoms are not entirely credible." [R. 20]. The ALJ gave "some weight but not controlling weight to the opinion of the state agency practitioner because it is the opinion of a non-examining practitioner." [Id.]. That non-examining practitioner, Keith H. Langford, M.D., concluded that the plaintiff "has a 'failed back syndrome after a discectomy and fusion.' He is to be rated as 03 light since he continues to have the same symptoms as pre op, but [his] exam at the pain center found no neuro deficit." [R. 344].

The plaintiff testified that he can read and write only a little, and that his sister completed his Social Security forms. [R. 51]. He further testified that while he was required to have a driver's license for his former employment, he had taken an oral test for the license. [Id.]. The ALJ dismissed the plaintiff's claims of illiteracy:

> The completed form for activities of daily living dated February 27, 2006, was only signed by the claimant. Since there was no signature on the line for the person who completed the form other than the claimant, there is a presumption that he completed the form, which required reading skills greater that at the first grade level (Exhibit 7E). The presumption that the claimant completed the activities of daily living form is further supported by the evidence of record as the handwriting is consistent with the handwriting on other forms, including the completed and signed medication list dated March 5, 2007 and his signature on SSA-1696-U4, Appointment of Representative, and the Fee Agreement (Exhibits 2B, 5B, and 12E). The claimant also stated on the initial Disability Report that he was able to read and understand English (Exhibit 4E).

[R. 19].

After the ALJ hearing, on May 10, 2007, Jon G. Rogers, Ph.D., performed a consultative psychological examination of the plaintiff at the behest of his attorney. He reported back pain rated as a seven on a 10-point scale. [R. 370]. Dr. Rogers found:

9

**Concentration and Attention**

Mr. Bishop was not able to perform the serial 7's subtraction task. He could not spell the word "world" backward. Three math problems from the WAIS were administered; he correctly answered all 3 of the problems.

**Memory**

Mr. Bishop could correctly repeat 5 digits forward and could recall three objects after five minutes. He could discuss his activities the day prior to and the day of the evaluation. Mr. Bishop could not recall the birthdays of family members or his age when he left school, "following the crowd."

**Fund of Information**

Mr. Bishop could name the President and the capitol of the United States. He could not name the Governor but could identify the capitol of Alabama. He could not name the mayor of Birmingham. He did not know the number of weeks in a year; he responded, "50."

**Abstraction**

Mr. Bishop could interpret none of the proverbs. Three pairs of objects were named; he could recognize the similarity among 2 of the pairs.

**TEST INTERPRETATION**

On the Wechsler Individual Achievement Test (WIAT), he was reading at the 1.2 grade level; performing Math at the 2.8 grade level; and Spelling at the 2.2 grade level. He is functionally illiterate.

On the Wechsler Memory Scale Form I (WMS-I), he earned a memory quotient of 72, indicating a pervasive memory deficit.

[R. 372-373].

Dr. Rogers diagnosed pain disorder associated with psychological factors and his general medical condition, depressive disorder, back pain (7/10), psychological stress stemming from his difficulties in relationship to his occupational problems, and a

GAF of 48.[1]  [R. 373-374].  Dr. Rogers also completed a Supplement Questionnaire as to Residual Functional Capacity, where he stated the plaintiff has a marked degree of deficiency of concentration, persistence or pace resulting in a frequent failure to complete tasks in a timely manner, a marked impairment in ability to respond to customary work pressures, a marked impairment in ability to understand, carry out, and remember instructions in a work setting, and a marked impairment in ability to perform repetitive tasks in a work setting.  [R. 375-376].  The ALJ found that "the examination with Dr. Rogers was not an attempt to seek treatment for symptoms, but in a effort to generate

---

[1] The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.  Diagnostic and Statistical Manual of Mental Disorders 30 (4th Edition) ("DSM-IV").  A GAF of 41-50 indicates: "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 32.  Several courts of appeal have, in unpublished or nonprecedential opinions, considered the impact of a claimant's GAF score of 50 or below.  The courts generally find that a GAF score of 50 or below is not in and off itself determinative of disability.  See Hillman v.Barnhart, 48 Fed Appx. 26, 2002 WL 31260962 at * 3, n.1(3rd Cir. 2002)(not precedential)(noting that a GAF of 50 would indicate a claimant could perform some substantial gainful activity); Rutter v. Comm'r of Soc. Sec., 91 F.3d 144 (Table), 1996 WL 397424 at *2 (6th Cir. 1996)(unpublished opinion)(exclusive reliance on GAF score not appropriate); Roemmick v. Shalala, 59 F.3d 176 (Table), 1995 WL 299894 at *2, n.1 (9th Cir. 1995)(noting that an inability to work is only one example of the level of adaptation meriting a GAF of 40); Seymore v. Apfel, 131 F.3d 152 (Table), 1997 WL 7555386 at *2 (10th Cir. 1997)("Contrary to claimant's contention, a GAF rating of 45 may indicate problems that do not necessarily relate to the ability to hold a job; thus standing alone without further narrative explanation, the rating of 45 does not evidence an impairment seriously interfering with claimant's ability to work."); Stalvey v. Apfel, 242 F.3d 390 (Table), 2001 WL 50747 at *2 (10th Cir. 1999)("The GAF is not an absolute determiner of ability to work.").  But cf. Lloyd v. Barnhart, 47 Fed. Appx. 135, 2002 WL 31111988 at *1, n.2 (3rd Cir. 2002)(not precedential)(noting that a vocational expert at the administrative hearing testified that a GAF of 50 or lower would indicate claimant would not be able to keep a job).

y

evidence for the current appeal." [R. 19]. "The undersigned finds that Dr. Rogers' assessments of the claimant's mental residual functional capacity departs substantially from the remainder of the evidence of record and is therefore given little credit." [R. 21].

The ALJ's finding is not supported by substantial evidence. Although Dr. Rogers does not qualify as a treating source under the Commissioner's regulations,[2] the ALJ is still required to consider his report. 20 C.F.R. § 416.927(d). Because Dr. Rogers is a specialist in the field of psychology, his opinion is entitled to more weight in this area.[3] Secondly, Dr. Rogers performed extensive testing, another reason to give his opinion extra weight. In any event, the opinions of a psychotherapist may not be arbitrarily ignored. See, Brady v. Heckler, 724 F.2d 914 (11th Cir. 1984)(opinion of psychotherapist considered by court of appeals in determining decision of ALJ not supported by substantial evidence).

The ALJ's finding that "the examination with Dr. Rogers was not an attempt to seek treatment for symptoms, but in a effort to generate evidence for the current appeal," is pure speculation on the part of the ALJ. [R. 19]. Dr. Rogers is a

---

[2] We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source.

20 C.F.R. § 416.902.

[3] "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)5)

psychologist who is used frequently by the Commissioner for consultative examinations, and it is improper for the ALJ to impugn the integrity of Dr. Rogers's opinion on conjecture. An ALJ is not free to base his decision on such unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988). . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity; however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original). The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996).[4]

The activities of daily living recited by the ALJ do not support a finding that the plaintiff's pain testimony is not true. The ability to perform the limited activities noted by the ALJ does not rule out the presence of disabling pain. The ability to watch television, do occasional shopping, or perform other sporadic activities does not mean the plaintiff is not disabled. In this circuit it has been recognized that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a

---

[4] Similarly, the ALJ assumed the role of "handwriting expert" in discounting the plaintiff's testimony that his sister helped him complete his application forms.

claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).  As has been noted:

> [S]tatutory disability does not mean that a claimant must be a quadriplegic or an amputee.  Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days.  <u>Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity</u>. . . . It is well established that sporadic or transitory activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.  In Easter v. Bowen, the court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable to perform any household chores to be considered disabled. See Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What counts is the ability to perform as required on a daily basis in the "sometimes competitive and stressful" environment of the working world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that "[e]mployers are concerned with substantial capacity, psychological stability, and steady attendance . . . ." 867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d 1076, 1079 (8th Cir.1980)).

With this standard in mind, it is clear that the ALJ's articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence.  Therefore, the ALJ failed to satisfy the requirements of Hale.  The conclusion of that court is equally appropriate in the instant case.  "[T]he Secretary has articulated reasons

for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

The ALJ found that the plaintiff is unable to perform his past relevant work. At the hearing, the ALJ elicited testimony from Dr. Russell, a vocational expert:

> Q: Okay. Consider a hypothetical individual, Dr. Russell, who has the claimant's age, education, and past relevant work experience, and this individual can do light work, although it needs to be in a climate-controlled or relatively dust-free environment. Are there jobs in the local economy this individual could perform?
>
> A: Yes, there would be unskilled work in the state of Alabama at the light level of exertion. There would be work such as cafeteria attendants, and there would be approximately 700 to 800 of those jobs. There would be bench work jobs of 2 to 3,000; automatic machine tenders of 3,000 to 3,500.
>
> Q: Okay. consider the same hypothetical individual, but in this case, credit the claimant's testimony regarding his pain and the way that affects his activities of daily living. Does that erode or preclude the jobs that you've described?
>
> A: It does. It would prevent him from completing an eight-hour workday on a sustained and continuing basis for a 40-hour workweek.

[R. 66-67].

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action

with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 30 July 2009.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.